UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BIANCA MCKINNON )<br>)<br>Plaintiff )<br>)<br>V. )<br>)<br>EXPERIAN INFORMATION )<br>SOLUTIONS, INC. )<br>)<br>Defendant ) | Case Number:<br><br>1:24 -CV- 4158 |

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 16 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## INTRODUCTION

This is an action for damages brought by Plaintiff Bianca McKinnon ("BIANCA MCKINNON" hereinafter "McKinnon"), an individual consumer, seeking actual, statutory damages, and costs against defendant EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "Experian") ("Defendant") respectfully alleges violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. 1681 et seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 15 U.S.C. §1681p ("FCRA") and 28 U.S.C. § 1331 because the complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

2. The venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and because the defendant transacts business in Atlanta, Georgia where a substantial part of the events and omissions giving rise to McKinnon's claims occurred.

3. The Court's exercise of personal jurisdiction over Experian is valid because a substantial part of the events and omissions giving rise to McKinnon's claim occurred within the Court's jurisdiction.

## PARTIES

4. Plaintiff Bianca McKinnon is a natural person residing in Stockbridge, Henry County, Georgia.

5. Plaintiff is "an individual" as that term is defined by the FCRA 15 U.S.C. § 1681a(c).

6. Defendant Experian is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

7. Experian is a corporation whose principal place of business is located at 475 Anton Blvd., Costa Mesa, California, 92626. Experian's

registered agent is C T Corporation System, 289 S Culver St, Lawrenceville, GA 30046.

8. Upon information and belief, Experian is a "consumer reporting agency" that compiles and maintains files on consumers on a nationwide basis as defined by 15 U.S.C. § 1681a(p).

9. Upon information and belief, Experian regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's creditworthiness, credit standing, or credit capacity.

10. Defendant Experian conducts business in Georgia.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11. Plaintiff reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

12. On or about August 23, 2012, McKinnon opened a Discover Bank credit card account ending in 9610, intended for personal, family, and household use. For over a decade, McKinnon maintained a positive relationship with Discover Bank, regularly making timely payments on the account.

13. On December 21, 2021, McKinnon applied for a credit limit increase with Discover Bank, but the request was denied. The denial letter cited incorrect information reported by TransUnion, Experian, and Innovis as the reason.

14. In response, McKinnon properly disputed the erroneous account information, including inaccuracies regarding names, addresses, phone numbers, and employment data that did not belong to her. McKinnon's dispute letters also addressed specific concerns with the Discover Bank tradeline. Discover Bank acknowledged McKinnon's dispute, and confirmed that it had corrected the tradeline associated with account #601100**********. These updates were sent to the credit reporting agencies (see Exhibit B: Letter from Discover Bank confirming corrections).

15. As a result, the Discover Bank tradeline was corrected or deleted from McKinnon's TransUnion, Equifax, and Innovis reports, leading to a significant increase in her FICO score. However, McKinnon repeatedly informed Experian that it failed to conduct a reasonable investigation into her credit dispute, as confirmed by the absence of any late payments on her updated credit reports for November and December 2022 (see Exhibit A: Updated credit reports).

16. Despite confirmation that Experian received McKinnon's detailed dispute letter in February 2024, Experian did not respond or engage with McKinnon regarding her disputes. McKinnon asserts that the derogatory reporting by Experian regarding the Discover Bank tradeline continues to harm her credit score and ability to secure new credit (see Exhibit A).

17. McKinnon further asserts that Experian is well-versed in the requirements of the Fair Credit Reporting Act (FCRA) and industry standards. Experian knows that failing to adhere to these standards can result in credit denials, higher interest rates, and adverse inferences that would not occur if accurate data were reported.

18. McKinnon contends that Experian's conduct was willful, intentional, and in reckless disregard of the clear requirements of the FCRA, regulatory guidelines, and industry standards, with the intent to undermine McKinnon's ability to improve her credit score. Alternatively, McKinnon asserts that Experian's actions stem from negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, which led to the inaccurate, misleading, or incomplete reporting at issue.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

19. McKinnon re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

## A. FICO, Inc.

20. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

21. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions. *While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. See* https://www.myfico.com *(a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").*

22. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

23. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

24. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

25. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

26. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

27. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

28. FICO does not control what information is provided on a consumer's credit report.

29. Instead, the scoring models, or algorithms, are based on the premise that the information provised by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

30. There are five (5) key factors that a FICO Score considers: (I) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

31. Each of the five (5) factors is weighted differently by FICO.

32. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

33. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score.

34. In factoring the severity of delinquent payments, a FICO Score considers how late payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

35. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

36. FICO Scores are entirely dependent upon information provided by data furnishers (DFs), such as banks and other financial institutions, to CRAs.

37. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit ristory, new credit, and credit mix) for each account in a credit report and creating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." See https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports. chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

38. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

## B. e-OSCAR

39. e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

40. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

41. The ACDV contains codes next to certain data fields associated with a credit file.

42. When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

43. When, a data furnisher reports on a consumer' account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

44. For clarification, an AUD, or other regular transmission, is sent when the data furnisher initiates reporting on a consumer's account. (e.g, opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

## C. McKinnon's Credit Report Contains Inaccurate and Adverse Tradelines, which McKinnon Disputed to no Avail

45. McKinnon reasserts and incorporates by reference all preceding paragraphs as if fully stated herein.

46. In or around January 2023, McKinnon became aware of a decrease in her credit score, which was allegedly due to nonpayment on her Discover Bank credit card account (#601100**********). This was unexpected, as McKinnon had consistently met her financial obligations, including those related to her Discover Bank account (see Exhibit C: McKinnon's Experian credit report, showing a 764 FICO score as of November 2, 2022).

47. Upon reviewing her credit report from November 2022, McKinnon identified numerous inaccuracies, including incorrect account information, names, addresses, phone numbers, and employment data that did not belong to her.

48. McKinnon disputed the inaccurate information, specifically pointing out errors in the payment history of her Discover Bank account. She mailed her dispute to Innovis and the three major credit reporting agencies (TransUnion, Equifax, and Experian) via USPS first-class mail.

49. On or around January 27, 2023, McKinnon contacted Experian's registered agent, Lisa Wallace, by phone to follow up on her dispute (see Exhibit: phone records). McKinnon believes that, in accordance with the Fair Credit Reporting Act (FCRA), the disputed tradeline was promptly removed from her Innovis, TransUnion, and Equifax credit reports due to the inaccuracies (see Exhibit: Innovis credit report). However, Experian failed to conduct an independent investigation or contact McKinnon regarding her dispute.

50. In January 2024, McKinnon submitted a second written dispute to Experian, reiterating that the 30-day and 60-day late payments on her Discover Bank account were incorrect and requesting that the

derogatory information be updated to reflect accuracy, as required by the FCRA. She emphasized that the inaccurate tradeline was negatively impacting her credit score, which is often used by lenders and employers to evaluate her creditworthiness.

51. McKinnon also filed a dispute with the Consumer Financial Protection Bureau (CFPB) regarding Experian's handling of her case (Case #221108-9721491). As of the filing of this complaint, McKinnon continues to suffer from Experian's failure to properly investigate her disputes or correct the inaccuracies in her credit report (see Exhibit: McKinnon's updated credit report).

52. McKinnon alleges that Experian's failure to investigate and correct the errors is unreasonable and constitutes a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681. As a result of Experian's actions, McKinnon has suffered damages, including but not limited to:

i. Expenses incurred in attempting to correct her credit report, such as postage, ink, paper, and time;

ii. Loss of time spent addressing the errors;

iii. Mental anguish, stress, aggravation, embarrassment, sleeplessness, and diminished enjoyment of life;

iv. A reduction in her credit score;

v. Hesitation to apply for new credit due to fear of rejection;

vi. Defamation, as Experian has reported inaccurate information to third parties;

vii. Closure of her Discover Bank credit card account, ending a relationship of over 10 years; and

viii. Denials of new lines of credit.

## COUNT I

### Experian - Violation of FCRA §§ 1681e(b)

53. McKinnon re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

54. Under the FCRA, a "consumer reporting agency" is defined as any person or entity that regularly engages in assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, and uses any means of interstate commerce to do so (15 U.S.C. § 1681a(f)).

55. Experian qualifies as a consumer reporting agency under 15 U.S.C. § 1681a(f).

56. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to ensure maximum possible accuracy of the information included in McKinnon's credit reports.

57. As a result of these violations, McKinnon suffered harm and is entitled to statutory damages, actual damages, costs, reasonable attorney's fees, and punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

## COUNT II

### Experian – Violation of FCRA § 1681i

58. McKinnon re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

59. Experian violated multiple provisions of 15 U.S.C. § 1681i by failing to conduct a proper reinvestigation of McKinnon's credit disputes. These violations include but are not limited to:

    a. Failing to conduct a reasonable reinvestigation of the disputed items and failing to either correct the inaccurate information or delete it from McKinnon's credit file, in violation of § 1681i(a)(1).

    b. Failing to remove erroneous items from McKinnon's credit file within 30 days of receiving her dispute, in violation of § 1681i(a)(1).

c. Failing to provide notice of McKinnon's dispute to the entities that supplied the inaccurate information within five business days of receiving her dispute, in violation of § 1681i(a)(2).

d. Failing to review and consider all relevant information provided by McKinnon in support of her disputes, in violation of § 1681i(a)(4).

e. Failing to properly delete disputed information from McKinnon's credit file that could not be verified after reinvestigation, in violation of § 1681i(a)(5).

60. These violations were willful, rendering Experian liable for statutory damages, actual damages, costs, reasonable attorney's fees, and punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, McKinnon respectfully prays that the Court enter judgment as follows:

1) For preliminary and permanent injunctive relief to stop Experian from engaging in the conduct described above;

2) Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

3) Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

4) Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

5) That judgment be entered against Experian for actual and monetary damages accrued by McKinnon as a result of Experian' violations;

6) Grant such other and further relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff respectfully demands a jury trial

Respectfully Submitted,

Dated: September 16, 2024

/s/ Bianca McKinnon ucci-308

By:

Bianca McKinnon-Pro Se
Plaintiff
110 Walter Way #1473
Stockbridge, GA 30281
Telephone: (769) 610-6491

## L.R. 5.1 (C) Certificate of Compliance

Per L.R. 5.1 (C), I certify that this pleading was prepared in Times New Roman, 14 point typeface.

Dated: September 16, 2024            By: /s/ *Bianca McKinnon* UCC1-308

                                    Bianca McKinnon-Pro Se
                                    Plaintiff
                                    110 Walter Way #1473
                                    Stockbridge, GA 30281
                                    Telephone: (769) 610-6491

## CERTIFICATE OF SERVICE

This is to certify that on the date set out below, the undersigned served all parties to this action with a true copy/true copies of Answer by depositing the same in the U.S. Mail, postage prepaid, addressed as follows:

EXPERIAN INFORMATION SOLUTIONS, INC
C T Corporation System
289 S Culver St
Lawrenceville, GA 30046.

Respectfully Submitted,

Dated: Dated: September 16, 2024

/s/ Bianca McKinnon UCC-308

Bianca McKinnon-Pro Se
Plaintiff
110 Walter Way #1473
Stockbridge, GA 30281
Telephone: (769) 610-6491